Case number 14-5306. Rebecca R. Gray, Appellant v. Anthony Foxx, Secretary, U.S. Department of Transportation. Mr. Jordan for the Appellant, Mr. Mayor for the Appellee. Mr. Jordan, good morning. Good morning, Your Honor. As indicated, my name is the Appellant, Rebecca Gray. This matter is before the Court as a result of a grant of a motion for summary judgment by the trial judge, in effect determining that there wasn't any genuine issue as a material fact. And in this case, the Government Department of to the Court is whether the lower court judge preempted the role of a jury in this matter and in effect decided the case based on merits that he found didn't have any substance. And we believe that he did. And as a result, his decision should be reversed. Of course, the Court is well acquainted with the standard of what's required for a motion of summary judgment with respect to the role of the judge. He's primarily to determine whether there are sufficient facts to go before a jury. In other words, whether a reasonable jury might find, on the basis of the facts, that there is a true claim and to go forward on a trial. The judge in this case, of course, didn't do that. When I first read his decision and then read it again and again and again, and most recently the other evening, last His decision is 33 pages. I believe there's some really critical errors in his factual determinations, but the first thing that caught my attention was a footnote 2, where he starts out and in effect sets forth what he considers to be the guidelines or the roadmap for his decision. And he states right out front that there are facts which he didn't believe were material. There were other facts there weren't any dispute. There were others that he didn't feel had been proven. And then he goes on to go through the proceedings, discuss some of the evidence. His discussion, in my view, and the way I read it, was instead of giving the benefit to the non-moving party, which is the normal standard, he made every effort to find on behalf of the moving party, which is the exact opposite. Well, Mr. Jordan, there's some burdens on the plaintiffs in a case like this, right? And one of the burdens is to rebut the argument that the government gives as to why your client was not chosen. And I couldn't find, and so help me, I couldn't find any evidence that you had proffered to rebut the rating that she received, the negative 4 rating on work characteristics. Did you ever challenge that? Oh, yes. Yes. What was the nature of the challenge? Well, the challenge was, first of all, when the initial rating was given, she was given a 10. And a gentleman by the name of Snow was also given a 10. I'm just referring to one aspect of the rating, the work characteristic in which she received a negative 4. That seemed to be important in the determination. And did you rebut that? What evidence did you proffer that undermined that in some reason? I think it was rebutted effectively, given if the court had considered all the evidence. But not specific, you didn't take issue with that somehow that negative 4 rating was erroneous or was itself some pretext? There was no evidence of that. I think we did, because we took the basic idea. The basic situation here is the lower court judge looked at specifics, and we were trying to encourage him to look at the total pictures looked at. These ratings were at least questionable. And I think we rebutted it, because if you go back to the history or the character of this branch, the fact that there's 9 men or 10 men and 1 woman throughout all these proceedings, and you carry that forward to the actual selection process, it's tainted. There is a question. There's a question that a jury could look at this and say, there's something wrong here. Now, I admit they have something called interview and what have you, where they adjusted the numbers. Our position was, and we think the evidence showed that, was this was based on pre-existing prejudice towards women in the agency. And it involved the same people. Her lack of a master's degree is pretty significant here, isn't it? Galloway and Sierra both had master's degrees. She didn't. That's pretty significant, isn't it? I don't think so, if you look at her history. Let me ask you this. Your argument isn't focused on the comparison between her and Galloway, right? You have to show a wide gap in qualifications. Not just a wide gap in qualifications. And there's no question, there's no wide gap in qualifications between her and Galloway. So the focus has to be on Sierra, right? That your case rises or falls on whether there's a wide gap between her and Sierra. And as I understand your argument, you're saying she had all this experience, Sierra may have had a degree, and that's the wide gap? Am I understanding your argument? No, I think that we're not giving up on either one of them. I think there was, of course, Sierra is a better case. What's the wide gap between her and Galloway? Well, she had 35 years of experience in learning, and seven years of it was in the specific position or branch that she was applying for. I think that, if you look at our cases, we get de facto intensive inquiries, and at least the cases I've seen thus far, you haven't made a wide gap. I think, at least for this judge, you're better focusing on Sierra. And am I right that the wide gap with Sierra is experience versus degree, and how that's weighed? Yes, that's probably, but I think that the other part of our argument might make this clearer, and that is, if you look at footnote four, for example, the judge looked at it, and he basically said, all right, these two gentlemen had master's degrees. My client did not, although she took some graduate courses. She obviously had more experience, more so than Galloway, but what he did do in this is he didn't take into consideration the other aspect, the other part of this, and that is, it's not just a question of qualifications. It's qualifications that have been tainted or brought into question that should be brought to the jury, because what the judge did in footnote four, he picks on, he says that my client said that she made four applications for these positions, and then she says five. And his conclusion from that is, she hasn't shown sufficiently that this occurred. He's not going to consider any evidence regarding prior conduct. And that prior conduct is critical, because basically what it does is a reflection on the selective process. And while in the case of master's degree as opposed to a BS might be persuasive in the facts here, you have a history of activities of discrimination towards women going back, involving this lady and involving these same people. So when you get to them, the position where they say, oh, it's a question of master's degree or bachelor's degree, there's a question there. I think it's a question that's not clear. And it's one that we're saying should not have been resolved by the judge the easy way, saying master's, BS, they're entitled to pick who they want. I think you have to look at the facts as what is the atmosphere, what is the history here? It wasn't just a master's and a BS in our position. And I think there's sufficient evidence here to go to the jury to say, is that the true reason? I don't think it is. But what the judge did in footnote four, he said, you have no direct evidence of discrimination. And under the law, we're only able to infer that if there's a wide gap in qualifications. So like it or not, I think the law says we need to look at the wide gap in qualifications. And that's why I'm focusing on that. Well, that's one aspect of it. No, it's not one aspect of it. That's the case. Well, here- Because you have no direct evidence of discrimination here. In the decision itself, the government and the judge itself assumed that she had proven a prima facie case that was conceded. They concentrated on the third element, was there a pretext for what they did? And so we're back to the argument. They're saying, oh, well, we just picked it on the basis of master's, BA. We're saying, well, there's more to it than that. The negative work characteristics, the fact that she came in, she was not in the top three in the rating. The top person in the rating was offered the job and declined it. Number two and number three were offered the job. So there's a little bit more going on than you're suggesting. I think that's not quite right. The initial- What's not quite right? The rating. The top two, it was a Mr. Snow, was given a 10. My client was also given a 10. I'm talking about the total rating. Of the total rating. I think there's a question because they moved Mr. Sierra and they moved Mr. Galloway up to the top people and they dropped my client down and therefore she was not eligible. Wasn't that after they- That was not- Pardon me? I thought that was after they brought in the work characteristics, the negative four rating. Yes, that's true. That's true. And they made the change. But what I'm saying is that the change, there's a question here is that why was the change made? And the judge or the court below took the approach, it's just master's BS situation. That's it. We're trying to say that you have to look at the whole situation. You have a claim of a hostile work environment here on top of just the issue of the discrimination. You have the retaliation issue. And these were elements that were pretty much pushed aside because the court, in the judge's view, master's BS degree and these people are justified in doing it. Let me ask you about footnote four. I don't see how that helps you because I'm looking at footnote four and he begins by saying Gray states she submitted four unsuccessful applications while in her sworn testimony, five such applications. Okay. You may have stopped there because he then says DOT has no records of Gray applying for vacancies before 2005. And Gray does not counter with any documentation of such applications. So the evidence before him is she says four or five times before I applied, he says that the DOT has no records. She has no records. That's a failure of evidence. Yes. And the answer to that is that in her initial complaint or informal complaint, she talks about the four events. In her deposition, which is part of the joint appendix, she indicates that on three occasions before 2005, she applied. This is in respect to her all-male selectivity. But there's no written evidence of that. In her deposition, she names the people that were selected, the three of them. She goes on to state. Well, that doesn't prove that she applied. Well, she testified in her deposition that she did. And DOT says we don't have any records of her applying. And she doesn't either. The deposition is her testimony under oath that she applied. And it's testified as to the people who were selected. Then she includes the two that Sierra and Galloway were her five. There's no refuting that. No one says that she did not apply. They're saying we don't have records. That doesn't mean she didn't apply. And secondly, in a deposition later of Mr. Pecone, he's a hard name to pronounce, indicated that their practice was to throw those records away. So the only records that were provided were as to the 2005 complaints, which were the ones that were primary. But there's no question that she applied for these past positions. But the judge is I'm just going forward from 2005. And that, in effect, precludes us from showing that there was an ongoing pattern of discrimination. All right, let me stop you. Are there any other questions? We'll give you a couple minutes to reply. You're over your time. Oh, I'm sorry. I should have been watching the thing here. Okay. Basically, then, we're saying, in effect. You vote. You're over your time. So I'll give you a couple minutes to reply. Mr. Mayor. Mr. Mayor. May I please the court. My name is Peter Mayer, counsel to the United States government here at the Department of Transportation. The court's questions indicate its recognition of the issue that the appeal presents. Simply, whether a reasonable jury could have concluded, based on everything that was in the record at the time the government moved for summary judgment, that the agency's decision not to hire the plaintiff was made for a discriminatory reason. No way of phrasing that is whether a reasonable jury could find that the agency's for its decision to hire Galloway and Sierra was pretextual or a phony reason when the real reason was discrimination. Let me turn to two factual issues that the plaintiff has discussed this morning that he suggests showed. When you look at all the evidence, there was a basis for a reasonable jury to conclude that the agency's real explanation was discriminated was false, that the actual explanation was discrimination. First point that he emphasizes this morning is that the plaintiff had shown evidence of a culture of discrimination within the human factors group. I think the important answer with respect to that issue is to keep in mind that at least with respect to the major claim the plaintiff makes, which is a hiring decision, that the discrimination that would be relevant to show is that the agency had engaged in a pattern of discrimination with respect to hiring. The anecdotal evidence that the plaintiff presented didn't have anything to do with the human factors group hired women or not. All of that anecdotal evidence tended to show was that when women were hired and in the workplace, they may have been subjected on occasion to rude and offensive treatment. We don't concede that that happened, but even if it did, the notion that there is offensive or rude conduct in the workplace is an entirely separate factual issue. Is it? If a plaintiff can establish that there is an environment in the workplace that mistreats women, is it an entirely separate issue to suggest that that may affect the hiring process? That's not your best argument, counsel. I'd like you to get to the qualifications issue. What's the, just for me, why isn't, I mean, he has to show that there's a wide gap in qualifications. Galloway, as you heard me say, I'm not persuaded so far. Sierra, I don't know. That looks a different matter. Sierra doesn't have nearly the experience that Ms. Gray does. What he has is a master's degree. That was the second point I wanted to raise, Judge Gross. Okay, okay. Sorry. Let's talk about the experience of the two candidates. The experience that the plaintiff claims is what she characterizes as 30 years of experience within the industry. Now, most of that experience was in the 20th century. Seven in FAA, right? That's right, but Sierra also had four at the same component FFAA, so I submit that there was not a wide gap in their experience in dealing with the Ewing-Thackers group, and I submit to you that the experience that they had working for the people who were making the high-rated decision was far more relevant than experience that either of them had back in the 20th century. What did that experience of Ms. Gray actually consist of back in the 20th century? Well, about 12 years of it, from 1972, I think, to about the mid-1980s, was working as a GS-7 for the Postal Service. About another 12 years was when she was running her own company. Now, you can characterize that as experience in the field if you like, but the problem that the hiring agency has is this. There's no way to verify the quality of that experience. You can't go to Ms. Gray's supervisor during that period of time and say, was she a good worker? How relevant is the experience that she had here relevant to what she'll be doing? So although you can claim, as she does, that she has all this 25 years of relevant experience in the 20th century, it's not nearly as important as the experience that both of them had working for the Ewing-Thackers group in the four to seven years, depending on what you're looking at. What do you make of, I take it, your opponent's argument that the negative four rating in the work qualifications component of the rating system, that that, I don't mean to put words on his mouth, but I think he was suggesting that that rating itself was somehow tainted with this workplace environment that mistreated women. What's your response to that? The record is very clear, Judge Griffith, in terms of what those negative characteristics were based on. You'll find that in the record with respect to pages 206 through 208 and 219. The problems that she had in the workplace were like this. Let me emphasize that the agency did not consider Ms. Gray a bad employee, not at all, but they had to make a comparative judgment. During the period of time she was working in the Ewing-Thackers group, she had three distinct problems. One, she missed deadlines. Two, there was a problem in terms of friction in the workplace with her colleagues. And third, there was a problem with respect to unprofessional conduct. And you'll find all that documented in the portions of the record that I've illustrated. They are not pretextual. But more important, this isn't a case of where the plaintiff was fired because of these characteristics. The question is whether she had clearly superior qualifications to Sierra, whom they selected. And I submit that the quality of her experience in the Ewing-Thackers group in the 20th century was not entirely satisfactory and that combined with Sierra's master's degree, at worst for the agency, put the question in play as to which was the superior candidate. I submit that a jury could not reasonably find that Gray had significantly superior qualifications to Sierra unless they relied exclusively on the length of her experience working for herself and for the post offices at GS-7 way back in the 20th century. Absent other questions from the court, we're prepared to submit the case for the court's disposition. All right. Thank you. OK. Why don't you take a minute and reply? Let me address, first of all, the argument that my client was somehow, her work experience was what have you, was tainted. She worked there for seven years in the area where she was going, where she was applying, where she would be employed. Is it right that Mr. Sierra worked in that same area for four years? I have seen that. I don't know where that came from. He worked for, I think, the same contractor. If it was in the specific area that my client is, I don't know whether that's true or not. But if she was such a bad employee, and I point out she worked there, say, five years. He did not claim that she was a bad employee. He was very careful to say that she wasn't a bad employee. So I don't think anyone's made that argument. Well, if she was not selected because of the claims he said that she didn't get along with people, she missed deadlines, she did this and she did that, why, I ask, did they not get rid of her as she was working for an independent contractor? That was a joint employment situation. They could have gotten rid of her if they wanted to. The three claims in all those years were never specifically described. And I know that at least one of them was just like we all do. We have conflicts with people occasionally. There's no, at that point in time, the claim that she was a not a good employee or a less than, the Sierra Boy they had no experience with at all, I think is a phony argument. That was not in the record. But once she complained, boy, that picked up. Then you had all kinds of complaints about seminars, all these retaliatory activities occurred. Nothing happened to her that I can see in the record where they complained to her boss or the contractor that she was not doing the job. All of a sudden, she's interviewed. And when she's interviewed, she's found lacking when there's no record of particular experience with Galloway and Sierra. I think taken together, there's justification to go to a jury to have this thing determined. Let's thank the court for your time.
judges: Henderson, Griffith, Wilkins